# Rhodes *et al.*, Administrators, &c., of Childs, *versus* Childs.

1. In an action to recover the proceeds of a check alleged by defendant to have been given to him by a decedent, evidence of declarations of defendant, and circumstances at the time of taking the inventory, not relating to the gift, was *held* to be inadmissible.

2. Evidence for the defendant for the purpose of showing the affection and regard of the decedent for him, *held* to be proper.

3. *Donationes causa mortis* have the similitude of legacies, i. e. they are revocable by the donor, and are ambulatory during life.

4. The gift must be with a view to the donor's death, and to take effect only on the donor's death by his existing disorder or in his illness.

5. The condition may be *implied* from the circumstances at the time.

6. Estoppels are odious, and in equity, as against the truth, they do not, as a rule, exist.

January 24th 1870, at Philadelphia. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montour county*: No. 3, of October Term 1869.

This was an action of assumpsit, brought July 4th 1868, by B. K. Rhodes and J. C. Rhodes, administrators, &c., of John Childs, deceased, against Charles W. Childs. The suit was to recover the amount of a check for $2824.50, drawn by John Snyder in favor of the decedent, which, the plaintiffs alleged, had been received by the defendant.

The defendant was the illegitimate son of a sister of the decedent; his mother was dead; he had been brought up and maintained from an early age by the decedent who was unmarried. The defendant lived with the decedent until he, defendant, was married, which was at about the age of twenty-one years. The decedent afterwards lived by himself until about two months

before his death, when, being aged and in feeble health, he came to reside with the defendant, and died at his house.

The case was tried, December 22d 1868, before Jordan, P. J.

The plaintiffs gave evidence of the delivery of the check to the decedent by Snyder in payment of a note due from him to the decedent, about a week before his death and whilst he was lying sick in bed, and that the money was drawn on the check by the defendant. They gave evidence also that when one of the administrators came to the house to take the inventory, the defendant produced some chattels, &c. The defendant was asked if he had money of decedent in his possession, he denied that he had; he was asked if he had not drawn $2824.50 on the Snyder check, he said he had, and had given it to the decedent, and said he did not know what the decedent had done with it; that he, defendant, had never seen it after he had given it to the decedent.

The plaintiffs then offered to prove by a witness, one of the administrators, that "he asked defendant if there was not another pocket-book? and defendant said there was, and went into another room, brought one and gave to witness a pocket-book containing fifty-one dollars and some cents, and that this was all the money of the intestate which the administrators got." Defendant objected to this offer as irrelevant, but did not object to plaintiffs proving by witness that he, witness, did not get the $2824.50. They also proposed to ask the witness how much money there was in the pocket-book? This was objected to by the defendant. These offers were rejected by the court, and bills of exception sealed. The plaintiffs proposed to ask the witness to relate all the circumstances that took place between him and Charles W. Childs respecting the estate of John Childs, deceased, at that time. The defendant objected, unless it had relation to the money mentioned in the bill of particulars filed. The court sustained the objection, and confined the conversation to the sum of money stated in plaintiffs' bill filed, which they asked to recover from defendant in this action. A bill of exceptions was sealed for plaintiffs.

There was evidence that the defendant had said, after the death of the decedent, that he had expected the decedent would do something for him, but that he had done nothing; that "his uncle John had given him the Snyder check to draw the money on and to keep it, for it was his (defendant's); but that his attorney had told him that, as he had no evidence, it was all worthless." There was evidence of conflicting statements by the defendant in relation to the receipt of the check, and as to what he did with the money.

The defendant gave evidence by his daughter who, at the time of delivery of the check, was between fourteen and fifteen years of age; that Snyder gave the check to decedent who was sick in bed; it was about a week before his death; the decedent gave the check to the defendant in presence of herself and her mother, and

told him to keep it for his own use. Defendant then offered to prove by another witness "that in 1866 John Childs told the witness he thought more of Charles W. Childs than any other of his relations; and that he intended to give him a considerable amount of money before his death. This is offered to explain the gift testified to by Ann Elizabeth Childs, in corroboration of her testimony and as explanatory of the relation existing between John Childs, uncle, and Charles Childs, nephew." The plaintiffs objected to the offer. It was admitted by the court and a bill of exceptions sealed.

The witness on the stand and others afterwards called, testified to facts of the character proposed in the offer.

The plaintiffs submitted these points:—

"3. The evidence of defendant's daughter, who is aged now between fifteen and sixteen years, dependent upon and subject to his control, that the intestate on his death-bed, gave the Snyder check to her father, in the presence of the defendant's wife and of the witness, is not sufficient in law to establish a gift of the said check by the intestate to the defendant, and will not of itself, or in connection with the declaration by the defendant in evidence, that the intestate gave him the check, or the proceeds of the check, justify the jury in finding a verdict in his favor.

"4. It is not now denied by the defendant that he got and still retains the proceeds of the Snyder check, to wit, the $2824.50, and that if the jury believe that while the inventory of the intestate's personal estate was being taken by the appraisers at the defendant's house, he, the defendant, was there asked by one of the administrators whether he had not drawn the amount of the check from the bank, and what he had done with it, and that he answered that he had drawn the money, but had given it to the intestate in his lifetime, and that he did not know what the intestate had done with it, nor did he know where it was; and that he persisted in this answer, knowing at the time that the inquiry was made of him by an administrator of the deceased, he, the defendant is now estopped or debarred from setting up a death-bed gift, or a *donatio mortis causa* of the check, as a defence in this suit, and that the verdict of the jury ought in such case to be in favor of the plaintiffs for the amount of the check, with interest, from the date of the demand."

The court answered the points as follows:—

3. "The court cannot answer this point as requested, inasmuch as we do not consider this as a case of *donatio causa mortis*, but as a gift from John Childs to Charles W. Childs, of the Snyder check. John Childs was the owner of the check, and we see no reason why he might not give it to whom he pleased. Whether the testimony of the daughter of Charles W. Childs, in connection with all the other evidence in the cause, is sufficient to satisfy

[Rhodes v. Childs.]

you that the gift was made by John to Charles, is submitted to you; and although we do not view this as a *donatio mortis causa*, yet the evidence to establish the gift should be so convincing as to remove from your minds any reasonable doubt as to the fact of the gift having been made, and that there was a delivery of the thing given."

4. "The several matters mentioned in this point, although not now denied by the defendant, the court are of opinion are not sufficient to estop him from claiming the check as a gift, if the jury are satisfied, from all the evidence, that the check was given to Charles and delivered to him; but although the court do not consider these several matters as estopping Charles W. Childs from claiming the check, the declarations of Charles, and his denial that he had the money, but had given it to his uncle, they do consider them as weakening the allegation that the check was a gift from John to Charles. Whether it was given is, however, submitted to you."

The verdict was for the defendant.

The plaintiffs took a writ of error.

The first three assignments of error were to the rejection of their offers of evidence; the 4th to the admission of the defendant's offer, and the 5th and 6th to the answers to the plaintiffs' points.

*B. K. Rhodes* and *J. W. Comly*, for plaintiffs in error.—As to the plaintiffs' 3d point: This gift was a *donatio causa mortis*, or if not, is governed by the same principles: Michener *v.* Dale, 11 Harris 63; Wells *v.* Tucker, 3 Binney 370; Cooper's Justinian, Lib. 2, tit. 7, §§ 1, 2, p. 100; Nicholas *v.* Adams, 2 Whart. 22; Headly *v.* Kirby, 6 Harris 326; Gardner *v.* Parker, 3 Madd. R. 184. The evidence was not sufficient to establish a gift: Walter *v.* Hoge, 3 Swanst. R. 97; Rossetter *v.* Simmons, 6 S. & R. 452; Walmesley *v.* Read, 1 Yeates 87; Rohrer *v.* Stehman, 1 Watts 442. As to 4th point: The declarations of the defendant estopped him: Commonwealth *v.* Moltz, 10 Barr 527.

*E. H. Baldy*, for defendant in error.—As to the meaning of *donatio causa mortis:* 1 Spence's Eq. Jur. 196; 2 Id. 912; 1 Story Eq. § 607 a; Nicholas *v.* Adams, *supra;* Toller on Ex'rs. 233; Wells *v.* Tucker, Michener *v.* Dale, *supra.* The competency of the daughter as a witness was for the court, its weight for the jury: Hill *v.* Chapman, 2 Brown C. R. 612; Blount *v.* Burrow, 1 Ves. Jr. 546; Tate *v.* Hilbert, 2 Id. 111.

The opinion of the court was delivered, March 21st 1870, by

THOMPSON, C. J.—The 1st, 2d and 3d errors are assigned upon

[Rhodes *v.* Childs.]

bills of exception to the rejection of offers of testimony by the plaintiffs below. The object of the plaintiffs in error in these offers, it is said in argument, was to bring before the court and jury a full and detailed statement of all that took place between the administrators and the defendant at the time of taking the inventory, and when the former was demanding of the latter the production of all the personal property of the intestate in his possession. Their object was one thing, and the propriety of adopting their views, and mode of doing it, was quite another. To introduce testimony pertinent to the issue was all right, and so far as anything occurred at the time of taking the inventory, or at any other time, was also proper, but the court could not see anything like this in the offers, and in this we fully agree. Everything pertinent to the question trying, that is to say, whether there was a gift by John Childs to Charles, and what the latter said in regard to it was received, and fully noticed by the learned judge, and we may suppose, fully discussed by counsel. In the rejection of the offers, which is the foundation of these assignments of error, nothing was excluded which ought to have been admitted, so far as we can see. These errors are therefore not sustained.

The 4th assignment of error is to the admission by the court of testimony offered by the defendant to show the affection and regard of John Childs for his nephew, the defendant, and declarations that he intended to give him a considerable amount of money before his death. This was offered as corroborative of the testimony of the witness who deposed to the actual gift. Authority is not needed to sustain a thing so reasonable. Just in proportion as affection, relationship and obligation were felt on the part of the donor to the donee, would such testimony be strong or weak, as corroborative of the positive testimony of a gift. There was much given to show unmistakably the strong affection of the donor in this case, to the donee, and in the constitution of many minds, it would be stronger than in an ordinary case of the same relationship. The donor was a bachelor all his life. The donee was the illegitimate son of a sister, had been raised by him, and had lived with, and labored for him until his marriage. After marriage the friendship continued, and more resembled that of a father for a son than an uncle for a nephew. Under such circumstances the gift, all must admit, would be infinitely more probable than if made to one upon the mere tie of consanguinity, and proves the propriety of admitting the testimony as affording a presumption strongly corroborative of that which went directly to the fact of the gift. The same kind of testimony was received in Wells *v.* Tucker, 3 Binn. 366, tried before Yeates, J., at Nisi Prius, the propriety of which was not even questioned in that

[Rhodes v. Childs.]

case, although commented on by the same learned judge, in his opinion delivered in banc.

This assignment of error is therefore not sustained.

The matter discussed under the 5th assignment of error was what seemed most especially to engage the attention of the counsel for the plaintiffs in error. The learned judge refused to charge as requested in the plaintiffs' 3d point, that the testimony of the daughter of the defendant, under the circumstances of her age, being between fifteen and sixteen years old, and dependent on her father for support, taken together with his own declaration on the subject of the gift of the check, would not justify the jury in finding a verdict in favor of the defendant. The learned judge declined so to answer, and in answering said that he did so, inasmuch as he did not consider the testimony as presenting a case of *donatio causa mortis*. He therefore left the testimony referred to, and all other testimony in the case, to the jury, to say whether or not it was a case of an absolute gift—a gift *inter vivos* or not, properly instructing them—that the proof to establish such a gift, viz., *inter vivos*, ought to be of a character so convincing as to remove from their minds any reasonable doubt as to the fact of the gift having been made, and also that there was a delivery of the thing given.

Blackstone, in his Commentaries, Vol. II. p. 514, defines a gift, *donatio causa mortis*, to be " a gift in prospect of death, when a person in sickness, apprehending his dissolution near, delivers or causes to be delivered to another, the possession of any personal goods, to keep as his own, in case of the donor's decease."

There are many authorities to show that donations *causa mortis* are now reduced as far as possible to the similitude of legacies; that is to say, they are revocable by the donor, and are ambulatory during the donor's life: 7 Taunt. 231 ; Tucker v. Wells, 3 Binn. *supra ;* we adopted the above definition in Gourley v. Linsebigler, 1 P. F. Smith 345, and illustrated it by holding that a gift by a soldier in good health, although in peril of battle, was not within the rule of *donatio causa mortis*, although he died in the field from disease two months thereafter. Story's Eq. Vol. I. § 606 says, " it is a gift of personal property by a party who is in peril of death, upon condition that it shall presently belong to the donee in case the donor shall die, but not otherwise." And in section 607 : " There can be no vested *donatio causa mortis*, unless the gift be with a view to the donor's death—and unless it be conditioned to take effect only on the donor's death by his existing disorder, or in his illness." It is not essentially necessary that this condition be expressly annexed to the gift by the donee. It may be implied from the circumstances of the donee at the time : Nicholas v. Adams, 2 Wh. 22. But whether express or only implied from circumstances, the implication must

[Rhodes *v.* Childs.]

be such as to establish the fact. It is also a settled rule on this subject that the donee in this sort of gift must establish the ingredients necessary to establish it such or fail; that is to say, that it was made in the donor's last illness in apprehension of death, and upon the condition mentioned. It would fail on that ground if it should appear to be a present gift: 2 Spencer's Eq. Juris. 912.

There was not a particle of testimony to show that John Childs was in any apprehension of death when he made the gift in question, and therefore no implication of a conditional gift was to be deduced, and certainly there was no pretence that he annexed any condition by express words. Had therefore the defendant rested his case on the ground of *donatio causa mortis* he must have failed. Nor could the learned judge, without committing an error, have sent the case to the jury on that ground, for there was no evidence to sustain it. The testimony made it a present absolute gift, if there was any gift at all, and the jury believed it. The counsel for plaintiffs in error, assumed that it was a *causa donatio mortis* that was meant by the donor, and as that was defeated, it was nothing, and the plaintiff must recover. This view intensified the earnestness with which the case was contested by the learned counsel. But notwithstanding, we do not see that they are right and the court below wrong in the view it took of the nature of the gift. It was not claimed that a check payable to him might not be the subject of a gift absolute, or *causa mortis*, being payable to bearer. The title would pass by delivery, and whatever is capable of manual delivery, and is delivered, may pass by gift. In Gourley *v.* Linsebigler, *supra*, it was expressly said that "bonds, bills or checks drawn by the deceased on his banker" will pass by delivery and become an executed gift. In the present case the check was payable to bearer, and the title would pass on a gift of it by mere delivery. If it was delivered, accompanied by terms of present and absolute gift (and the jury have so found), the title passed as effectually to the defendant, to the money it called for, as if he had given value for it, in a contest where creditors are not concerned.

The last error is rather novel, viz., that the defendant having denied that he had the money, and having to one or more witnesses said, he drew it and gave it to his uncle, as they assume to have proved, he is equitably estopped from claiming it as his own by gift. The equity the plaintiffs set up, and that which they claim estops the defendant from alleging and proving the truth, is, that they have been obliged to bring suit to recover it, and if he may claim the money and defeat them, the estate will have costs to pay. This assumes that if he had told them the truth in the outset, viz., that the money had been given to him, they would not have sued for it. This does not follow by any means—does not result necessarily as a consequence. It was their right

[Rhodes v. Childs.]

to sue or not, and it was their duty to sue if not absolutely convinced that there had been a gift. Therefore what he said did not mislead. In fact, all he said was in denial of their right to the money. He denied it first, last and all the time; and if some of the modes of denial were not true, it did not prevent him from setting up others that were. It is a waste of time to adduce reasons against the idea of an equitable estoppel for the causes assigned here. At best they are odious in law. In equity an estoppel as against the truth does not, as a rule, exist: Steinhour v. Whitman, 4 S. & R. 438. If the plaintiffs had no right to recover, it was their own folly to sue. One of their own witnesses, called to prove defendant's declaration about the money, and that he had it not, on cross-examination proved that he claimed it as a gift. We need not enlarge. The learned judge was right in his ruling on this point, as he was in all the other matters complained of, and therefore the judgment must be affirmed.

                                          Judgment affirmed.