## Flanigan *versus* Flanigan's Administratrix.

A husband being sick, agreed with his wife that they would divide their furniture, and separate. His father took him and his furniture to his house, where he died a few days afterward. The father alleged that his son had given him his furniture, to defray his funeral expenses, which he did. In an action of trover and conversion, brought by the widow, who had been appointed administratrix of her deceased husband's estate, against the father, for the furniture alleged to have been given him by his son, *Held.* (*a*) That it was irrelevant to show the happy relations that had existed between husband and wife. (*b*) That it was irrelevant to show that the wife had demanded the body of her deceased husband from his father for burial, and it had been refused her. (*c*) That it was a question of fact for the jury to determine, whether the son had given his father the furniture for which suit was brought.

January 18th, 1887. Before GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR C. J., and CLARK, JJ., absent.

ERROR to the Court of Common Pleas, No, 3, of *Philadelphia county :* Of July Term, 1886, No. 143.

Trover and conversion by Rose Bella Flanigan against Thomas Flanigan. Plea, Not guilty.

The following are the facts as they appeared on the trial of the case before FINLETTER, J.

[Flanigan *v.* Flanigan.]

The plaintiff and Patrick Flanigan were husband and wife. About the 12th of December, 1883, the husband being sick, they made the following agreement.

Philadelphia, Dec. 12, 1883.

We, Patrick Flanigan and wife, by mutual agreement, have separated, and agreed to divide the contents of our property. His wife is to take the piano, and the husband to take all the rest of the household goods.

| Witnesses: | Signed, |
|---|---|
| P. H. GRAY. | PATRICK FLANIGAN. |
| MARY CONNELLY. (X) | BELLA FLANIGAN. |

Patrick Flanigan then went to live with his father. In a few days after, he died. Before his death, the father alleged that his son had given him his furniture to defray the expenses of his funeral. The funeral expenses amounted to $202, which the father paid.

After the death of said Patrick Flanigan, his widow took out letters of administration on his estate, and as such administratrix brought the suit in trover against the father, Thomas Flanigan, for the said furniture.

During the trial the plaintiff introduced the following evidence.

Mrs. Deal sworn.

I lived next door to Mr. and Mrs. Patrick Flanigan. I was often in the house.

*Q.* What knowledge have you of Mrs. Flanigan sitting up with her husband, Patrick Flanigan?

[To this question defendant's counsel objects. The Court overruled the objection, and the counsel for the defendant took an exception, and the Court sealed his bill thereto.]

*A* I know she sat up all night, and she carried the pillows and bolsters up and down stairs, and also a feather bed, when he did not feel well, and she often carried a feather bed down stairs for him, and went out at one o'clock at night to get liquor to make him punches, which he fancied. He took a fancy for doughnuts, and I went in there to make them at 11 or 12 o'clock at night, at Mrs. Flanigan's desire. They lived like two children; and never heard them have a word. He said, "I have the best of care, and my wife gives me better care than my mother could or would. I could not have a better wife. (First assignment of error.)

Counsel for plaintiff calls upon counsel for defendant to produce a letter written by plaintiff to defendant, December 17th, 1883, of which notice was given to Mr. McKinley, January 20th, 1885, by John McDonald. Mr. McKinley does not

produce the same. Whereupon counsel for plaintiff offers in evidence a copy of said letter, as follows:

MR. FLANIGAN, STONE MASON:
Clementine and Emerald Sts.
Dear Sir: I respectfully claim the body of my late husband for the purpose of burial, and will thank you to let me know, by bearer, if you are willing for me to take it without trouble. As his wife, it is my right, and you must not do me the injustice of refusal. He will be buried from my father's house, 329 E. York St.
Your daughter-in-law,
(Signed)	ROSE BELL FLANIGAN.
Dec. 17, 1883.

Plaintiff's counsel then offered in evidence the answer to the foregoing letter, as follows:

BELLA FLANIGAN: You will not get your husband's body. Go ahead with your trouble, if you like. You will never get Patrick's body.

Plaintiff's counsel also offered in evidence the envelope, wherein this answer was returned, bearing the following indorsments, viz.:
BELLA FLANIGAN,
MR. FLANIGAN,
STONE MASON,
Clementine and Emerald Sts.
Philad'a.
To which the counsel for the defendant objected. Objection overruled. (Second assignment of error.)
The court instructed the jury inter alia as follows:
From the evidence it would appear that the defendant came to take his son and the furniture away. There is no evidence that the sick man desired it, nor that the defendant had any reason to do what he did. It was a case in which a man, without authority of any kind, takes possession of another man's property. The evidence is that the father went there for that purpose. You, therefore, start with a wrongful act. No man has a right to come to a man's house and take away his property without authority.
The evidence tended to show that the defendant absolutely refused to allow her (the wife) to see her dying husband. The defendant forcibly carried away property which he had no right to take. The defence is that the husband, on

[Flanigan *v.* Flanigan.]

his death-bed, gave these things to the father, upon the condition that he would pay the funeral expenses.

The witness said, that the dying man said to his father, " Take my furniture, and pay my expenses." If that were true, it gave him no right to keep the furniture. He says, take the furniture, and pay the debts of my funeral. If the husband had said, I make you a present; I give you these upon condition that you pay my debts; then of course, they would have belonged to the father when he paid all the debts of the son; but the only witness who speaks of that, does not bring it up to that point. Of the credibility of this witness, it is a matter entirely for you to judge. It does not amount to a gift to the father; it simply amounts to this,—that the goods were given to him in trust to pay his debts. That he has not done. I do not see that there is any defence, unless the jury are satisfied that there was an absolute gift, in so many words, from the son to the father. But I apprehend you will not find there was a gift of the goods. It does not amount to a gift, if you believe the daughter, and I do not see how you can, under the evidence. (Third assignment of error.)

Verdict for the plaintiff in the sum of $590, and judgment thereon. Whereupon the defendant took this writ and filed, *inter alia*, the above three assignments of error,

*Joseph McKinlay* for plaintiff in error.

*Joseph Mellors* for defendant in error.

Mr. Justice TRUNKEY delivered the opinion of the court March 21st, 1887.

The first and second assignments of error must be sustained for the reason that the testimony was irrelevant. That Mrs. Flanigan kindly treated her husband while they lived together had nothing to do with the issue. The testimony of Mrs. Deal was inadmissible to contradict Kate Flanigan, if that was the purpose for which it was offered, for Kate Flanigan testified to what had occured at her father's house, and Mrs. Deal to what occurred at another time and place. The letters showing that the widow of Patrick Flanigan demanded his body, which was refused her, were written after the alleged conversion of the goods. Such testimony as is set out in these assignments might raise indignation in the minds of the jurors and enlarge punitive damages; but the facts not having occurred at the time of the alleged wrongful taking of the goods, were impertinent.

The third assignment must also be sustained. Patrick Flanigan and his furniture were taken to his father's house

[Harbert v. Gormley.]

some days before Patrick's death. A daughter of the defendant testified that Patrick gave the furniture to the defendant, saying, "Father, I give you all my furniture to pay all my expenses." She said this was on Wednesday, and Patrick died on the following Sunday. The learned judge of the common pleas disbelieved the witness, and did not see how the jury could believe her; but it was for the jury to determine her credibility, and whether Patrick gave the furniture to his father. If he did, the act of taking possession by the father was settled in the lifetime of the son. From the testimony the jury could well have found that the goods were taken on the same day that Patrick went to the defendant's house, and that Patrick was present when his goods were removed from his own dwelling. In that case, in absence of evidence to the contrary, the presumption is, that Patrick went of his own will, and assented to the moving of the furniture; not that the father's act at the start was wrongful.

Saxon testified that he hauled the furniture to Thomas Flanigan's house. It appears in the testimony set out in the bill of exceptions, that Saxon was asked if he did not say that he had been employed by the defendant, and he answered: "I do not remember. Mr. Patrick Flanigan employed me to take the furniture away." Were this a mistake, and even if the defendant had employed Saxon, the other evidence was such that the jury ought not to have been told: "The defendant forcibly carried away property which he had no right to take."

Did Patrick give the furniture to the defendant? We think there was sufficient evidence to require submission of that question to the jury. And if submitted, it should not be fogged with narrations of family difficulties which have no connection with the alleged act which is the foundation of this suit. The issue involves no extended inquiry into the conduct of the parties toward each other either before or after the alleged conversion.

Judgment reversed, and *venire facis de novo* awarded.