# Wendt's Estate.

*Gift inter vivos—Presumption of fairness.*

If there is no evidence which tends to show that the donor was incompetent to make the gift, or which raises suspicion of fraud or undue influence on the part of the donee, the capacity of the donor and the fairness of the transaction will be presumed, unless the relation between the parties is such that the policy of the law casts upon the donee the burden of showing that the gift was the voluntary and intelligent act of the donor. In the absence of such evidence this burden does not rest on children who receive gifts from their parents.

*Appeal—Review of auditor's findings of fact.*

An auditor's findings of fact based on competent testimony will not be reversed except for plain error.

Argued March 20, 1900. Appeal, No. 22, March T., 1900, by Henry P. Wendt, legatee of Henry Wendt, deceased, from

decree of O. C. York Co., dismissing exceptions to auditor's report in the distribution of the estate of Henry Wendt, deceased. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by ORLADY, J.

Exceptions to auditor's report. Before STEWART, J.

It appears from the auditor's report that testator died leaving several children, one of whom, Sallie Wendt, was named as executrix of his will. Exceptions were filed to the account of the executrix by Henry P. Wendt. In one of these exceptions he sought to charge accountant with the value of two railway bonds of the face value of $1,000 each. It appeared from the evidence taken before the auditor that Sallie Wendt, the executrix, never had in her possession but one of the said bonds. There was also evidence tending to show that this bond had been in the possession of her father as his property until a few months previous to his death, and that there had been a gift of the bond to Sallie Wendt by the testator in his lifetime, and the auditor found as a question of fact that there was such gift of said bond by the testator in his lifetime to Sallie Wendt which was valid as a gift inter vivos.

The court dismissed the exceptions to the report of the auditor and Henry Wendt appealed.

*Error assigned* among others was in finding as a fact that there was a valid gift by the testator to the accountant in the lifetime of the former, of a Northern Central Railway bond for $1,000.

*Nevin M. Wanner*, with him *E. Z. Strine*, for appellant.—The burden of proof on the contrary, was unquestionably upon the accountant, to make out the alleged gift by full, clear and satisfactory evidence of all the facts essential to constitute a valid gift inter vivos: Scott v. Reed, 153 Pa. 14; Cummings v. Meaks, 2 Pitts. R. 490.

The measure of proof required to establish the gift of a large proportion of a donor's estate to a donee, who was in a position to exercise undue influence over him, as in this case, and who, as his executrix, got possession immediately after his death, of all his papers, cannot be found in the uncorroborated testimony of Sallie Wendt in this case: Clark v. Clark, 174 Pa. 309.

Wherever one person obtains by voluntary donation, a large pecuniary benefit from another, the burden of proving that the transaction is righteous is upon the person taking the benefit: Clark v. Clark, 174 Pa. 309.

The facts fall within the following cases in which the gifts were held to be invalid for the same reasons: Stockham's Estate, 6 Pa. Dist. Rep. 196; Kulp v. March, 13 Montg. 17; Hemphill's Estate, 180 Pa. 87; Scott v. Reed, 153 Pa. 14; Fross's Appeal, 105 Pa. 258.

It is of a kind in which the court said in Harbold v. Kuntz, 16 Pa. 210, that "the facile conscience may stretch itself like india rubber."

*H. L. Fisher*, with him *G. G. Fisher*, for appellee.—It plainly appears from the testimony that he (the donor), was prompted to make it by natural affection and a desire to compensate his daughter for faithful and valuable services. It was a just as well as a generous act. . . . In these cases the natural affections of the donor for the donee, and the kind and faithful services rendered by the latter to the former, are corroborative of the positive testimony that a gift was made: Yeakel v. McAtee, 156 Pa. 600, citing 8 Am. & Eng. Ency. of Law, 1336, 1337, and Rhodes v. Childs, 64 Pa. 18.

As to the competency of the accountant donee, when called by the adverse party, and the effect of her testimony, we beg leave to refer to Seip v. Storch, 52 Pa. 210.

Though partly for services, the gift is valid and good: Yeakel v. McAtee, 156 Pa. 600, and cases cited; Rhodes v. Childs, 64 Pa. 18; Malone's Estate, 37 Leg. Int. 63.

Opinion by Orlady, J., July 26, 1900:

Henry Wendt died June 5, 1893, having made a last will and testament in which he named his daughter, Sallie Wendt, as the executrix thereof, and devised his estate, real and personal, to his widow during her natural life, and at her death the property was to be sold and the proceeds divided equally among his five children. Lydia Wendt, the widow, died December 26, 1894. The executrix filed her account October 30, 1896, to which exceptions were filed by Henry Wendt; these an auditor was appointed to consider and determine. The excep-

tion which is the subject of the present contention was overruled by the auditor and was renewed in the court below in the following form: "The auditor erred in finding as a fact that there was a valid gift, by the testator to the accountant in the lifetime of the former, of a Northern Central Railway bond for $1,000." This, with other exceptions, was dismissed and the report of the auditor was confirmed absolutely. At the hearing before the auditor it was alleged that the testator at the time of his death owned two bonds issued by the Northern Central Railway Company of the value of $1,000 each, and that the accountant should be surcharged with their value.

After a careful examination of the testimony we concur with the conclusion of the auditor as to the facts found, and his application of the law to them. There is no evidence tending to show that more than one bond came into the hands or control of the accountant, which she claimed had been given to her some months prior to her father's death as a gift, or in recognition of the special services rendered by her to the father and mother. The other children had married and were living away from the home of the testator. Sallie Wendt was unmarried and had been living in Philadelphia for some time where she was reciving $12.00 per week as stenographer. In 1891, at the request of her father who was then sick and had been in poor health for two years, she abandoned her work in Philadelphia and came to stay with and care for her parents, who lived alone, and were over seventy-four years old. There is no proof of any undue influence, artifice or fraud in securing the bond in dispute. That the father had special regard for and confidence in the daughter is shown in the fact of making her executrix of his will. The testator was not in any way incompetent, and the gift, if made, was not an unreasonable one under the circumstances. The accountant was called as if under cross-examination and was rigidly examined by able counsel. She testified that about three months before her father's death he gave her the bond saying: "'It is but just that you should have something more than the others and I'll give it to you now for your very own.' He took the bond out of the box and gave it to me, and then he handed me the box to put the bond back again. I do not know where the box was before. I put it (the box) in my mother's wardrobe, in my mother's room; the only thing that

was ever locked, kept under lock and key, was the wardrobe. He said, ' You left your position, came home to take care of me and at that time I told you you would lose nothing by coming.' My mother was present." It appears that a rumored objection by Henry Wendt to this transaction had been brought to the mother's ears, and, a few days before her death, she called to her bedside her son Henry, this appellant, and said, "' Henry, I cannot die until you and Mary (a sister) promise me there won't be any fuss about that bond father gave Sallie, after I am gone.' Henry replied, ' Mother don't worry, I won't make any trouble about anything,' and she answered, ' Now I can die in peace.' Henry was standing at mother's bed, and had hold of her hand, and Mary was standing at the head end of the bed right alongside of mother, and Sallie, she was standing toward the foot end alongside of me." While there is some variance and some apparent contradiction as to the exact words used by the dying mother and the appellant, the testimony last quoted is that of a sister who was not affected by any selfish consideration since she executed a release to Sallie Wendt of all interest in this bond. It is conceded that after putting the accountant on the stand as an adverse party for cross-examination, the witness became competent to testify at length to the whole transaction (Seip v. Storch, 52 Pa. 210; Forrester v. Kline, 64 Pa. 29), but the appellant contends that the credibility of the witness was so affected by her own statements and conduct, by the testimony of other witnesses and presumptions and legal inferences to be drawn from all their testimony that her claim to this bond is not made out by that degree of proof necessary to support a gift. The release, which was signed by two of the sisters, was not evidence of her lack of faith in her claim, but was rather a precautionary measure to avoid litigation between the brother and sisters. The shade of difference given to the several conversations, and her denial of having any bonds for appraisement are not sufficient to overcome her positive testimony which is strengthened by undisputed facts and by two other witnesses. The weight of this testimony was for the auditor in the first instance. The credence to be given her testimony was largely to be determined by her whole testimony, her manner, motive or bias, the inherent probability of her story, want of accurate recollection and contradiction: Lautner v.

Kann, 184 Pa. 334.    Having the special advantage of seeing the witness, the auditor finds that the gift of bond No. 2,754 to Sallie Wendt by the testator in his lifetime was complete and absolute and that all the requisites of a valid gift inter vivos are shown.

If there is no evidence which tends to show that the donor was incompetent to make the gift or which raises suspicion of fraud or undue influence on the part of the donee, the capacity of the donor and the fairness of the transaction will be presumed, unless the relation between the parties is such that the policy of the law casts upon the donee the burden of showing that the gift was the voluntary and intelligent act of the donor.    In the absence of such evidence this burden does not rest on children who receive gifts from their parents.    These gifts are, prima facie, good, and it requires something more than the mere relation of parent and child to nullify them or to impose on the donee the burden of showing that they are free from any taint of fraud or undue influence.    It is natural for parents to assist their chidren, and if they do so by making gifts to them which are reasonable under the circumstances, no presumption of incapacity arises.    In these cases the natural affection of the donor for the donee and the kind and faithful services rendered by the latter to the former are corroborative of the positive testimony that a gift was made : Rhodes v. Childs, 64 Pa. 18 ; Worrall's Appeal, 110 Pa. 349 ; Yeakel v. McAtee, 156 Pa. 600 ; Carney v. Carney, 196 Pa. 34.    While a gift needs no consideration to support it (Com. v. Crompton, 137 Pa. 138), in this case, there were services rendered and sources of employment sacrificed, all of which was acknowledged by the donor, who was moved also by paternal regard to make the gift.    The evidence of delivery by an actual change of the possession of the bond and Sallie Wendt's exclusive possession of it afterward, was sufficient to sustain the finding by the auditor.    In fact that phase of the case is not seriously questioned.    The natural inference from appellant's argument is that Sallie Wendt stole the bond, an inference which is not supported by any fact in evidence : Pryor v. Morgan, 170 Pa. 568.

The assignments of error are overruled and the decree of the court is affirmed.