Titusville Trust Company, Admr., Appellant, *v.* Johnson.

Argued October 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*J. Perry Eckels,* with him *Charles B. Stegner,* for appellant.

*George J. Barco,* with him *Yolando G. Barco, Edward J. McDonald* and *Barco & Barco,* for appellee.

OPINION BY MR. JUSTICE BELL, November 9, 1953:

A narrow question is involved—was the evidence sufficient to prove a gift mortis causa?

An action of replevin without bond was instituted by the Titusville Trust Company, Administrator d.b.n. of the Estate of C. P. Collins against Edith Johnson and her son, Cecil Johnson, to recover certain stock certificates of various corporations of the approximate value of $25,000., which were registered in the name of the decedent at the time of his death. An answer was filed setting forth that Cecil Johnson did not claim any right in these certificates, but his mother, Edith Johnson, housekeeper of the decedent, claimed to be owner of the certificates by virtue of a gift mortis causa from Collins two days before his death. The jury returned a verdict for defendant; plaintiff's motion for a new trial and for judgment n.o.v. were dismissed; only the question of a judgment n.o.v. is raised on this appeal.

Collins was a junk dealer. His mode of living was eccentric and comparable to that of a recluse. For many years he lived in a shanty consisting of three rooms in the midst of his junk yard in Oil Creek Township, near Titusville, Pa. The defendant went to work for Collins as a housekeeper in the spring of 1930. In

addition to living at the shanty and keeping house for the decedent, she also worked in the junk yard selling articles for him and generally helping him in his business.

Collins, aged 56, died on January 15, 1951, at 12:05 A.M., intestate, unmarried, and without issue. He left a brother, sister, and niece and nephew, children of a deceased sister. Although the sister lived nearby, she hadn't seen him for a long time and it is clear that his family paid no attention to him.

On January 12, 1951 Collins suffered a cerebral hemorrhage while in Titusville with Edith Johnson. Cecil Johnson, the housekeeper's son, in response to a telephone call from his mother, drove to Titusville where he found his mother and Collins, sitting in the latter's automobile. Collins was seated behind the steering wheel of his automobile with his head hanging down on his chest. Johnson offered to take him to the hospital, but the decedent asked that he be taken to the "yard", referring to his home. When they arrived at the yard, Johnson immediately telephoned for the doctor. In the meantime, Collins refused to move from his automobile, saying that he would be all right in a little bit. While they were waiting for the doctor Mrs. Johnson went into the house while her son remained in or stood nearby the car. According to the testimony of Cecil Johnson, Collins then began fumbling about his shirt. He was accustomed to wearing several shirts or sweaters and no overcoat. He pulled out of his shirt a large brown manila envelope and asked Johnson to call his mother. His mother came out and sat in the decedent's automobile. Collins, who had the envelope in his lap, handed it to her and said: *"If anything happens to me, these stocks are yours."**

---

* Italics, throughout, ours.

She took the envelope containing the stock certificates and placed it in her pocket.

Shortly thereafter, the doctor arrived and, on examination, found Collins to be critically ill and ordered him to be taken immediately to the hospital. As Johnson was about to leave to take Collins to the hospital, his mother handed him the envelope containing the stock certificates. The following morning, January 13, 1951, Johnson placed this envelope in his safe deposit box in the bank in Pleasantville. At the trial he proved, and the cashier of the bank corroborated him, that the box contained the securities in question.

The testimony was conflicting in some parts but there was no conflict as to Collins's illness or Johnson's testimony as to the gift of the securities and what was done with them. The stock certificates were not endorsed and were obtained under circumstances which were undoubtedly suspicious, but the equities of the case were with the defendant, and Johnson's testimony, which was unshaken, was obviously believed by the jury.

We said in *McDonald v. Ferrebee*, 366 Pa. 543, 545, 79 A. 2d 232: "We shall examine the testimony, as we must on a motion for judgment n.o.v., 'in the light most advantageous to the [party who has the verdict]. He must be given the benefit of every fact and every reasonable inference of fact arising therefrom and any conflict in the evidence must be resolved in his favor: Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 319, 53 A. 2d 725; Welch v. Sultez, 338 Pa. 583, 590, 13 A. 2d 399; Ashworth v. Hannum, 347 Pa. 393, 395, 32 A. 2d 407': Levenson v. Lustman, 365 Pa. 244, 246, 74 A. 2d 134."

In *Elliott's Estate*, 312 Pa. 493, 167 A. 357, the Court said (pages 498-499) : "A gift causa mortis differs from other gifts only in that it is made when the

donor believes he is about to die, and is revocable should he survive. As was said in Walsh's App., 122 Pa. 177, 'A gift is more than a purpose to give, however clear and well settled the purpose may be. It is a purpose executed. It may be defined as the voluntary transfer of a chattel completed by the delivery of possession . . . . All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos and called donatio mortis causa. But by whatever name called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa.' See also McHale v. Toole, 258 Pa. 293. We have frequently stated the elements of a valid gift inter vivos: Yeager's Est., 273 Pa. 359; Kaufmann's Est., 281 Pa. 519; Leadenham's Est., 289 Pa. 216; Allshouse's Est., 304 Pa. 481; Stewart's Est., 309 Pa. 204. 'To establish a gift inter vivos . . . two essential elements must be made to appear: an intention to make the donation then and there, and an actual or constructive delivery at the same time, of a nature sufficient to divest the giver of all dominion, and invest the recipient therewith': Yeager's Est., supra." See also *Tomayko v. Carson*, 368 Pa. 379, 83 A. 2d 907.

What is the meaning of the words Collins used when he handed Mrs. Johnson the stock certificates; was there an actual or constructive delivery; and did

Collins believe .death was impending? A question similar to the last one arises in cases involving the admissibility of dying declarations and the rule or test there laid down is equally applicable here. To validate a gift mortis causa, it is not necessary that the donor who is sick or ill or injured expressly say that he knows or believes he is dying—that may be inferred from the attendant circumstances. It will suffice if at the time the gift was made, the donor believed he was going to die, that he was likely to die soon; and death did actually ensue within a reasonable time thereafter. The question depends primarily upon the state of the donor's mind. In passing upon this question all the attendant circumstances should be considered, including the nature and extent of his sickness, illness or injuries, his physical condition, his conduct, and anything that was said to and by him. Whether the attendant facts and circumstances of the case warrant submission of this question to the jury is in the first instance for the court, but when admitted, the donor's state of mind and the credibility, interpretation and weight to be given his statements are for the jury under proper instructions. Cf. *Commonwealth v. Knable,* 369 Pa. 171, 175, 85 A. 2d 114.

We have no doubt that the court in the first instance, and the jury ultimately, could properly infer from the facts and circumstances of this case that Collins believed he was about to die when he gave Mrs. Johnson the stock certificates and said, "If anything happens to me, these stocks are yours." There is considerably more doubt as to what those words mean, but we agree with the court below and the jury that they can fairly and reasonably be interpreted to mean "If I die these stocks are yours." Cf. *Jacques v. Fourthman,* 137 Pa. 428, 20 A. 802 and *Elliott's Estate,* 312 Pa., supra.

Was the evidence sufficient in legal contemplation to establish the gift, i.e., was it clear and convincing. The burden of proving a gift mortis causa, like the burden of proving any inter vivos gift or claim against the estate of the decedent, is on the claimant and must be supported by clear and convincing evidence. Cf. *Tomayko v. Carson,* 368 Pa., supra; *Leadenham's Estate,* 289 Pa. 216, 137 A. 247; *Snyderwine, Adm. v. McGrath,* 343 Pa. 245, 22 A. 2d 644. Whether the evidence meets that standard (or any other prescribed standard) of proof is always a question of law for the Court: *Gerfin v. Colonial Smelting Co.,* 374 Pa. 66, 97 A. 2d 71; *Tomayko v. Carson,* 368 Pa., supra; *Wagner v. Somerset County Memorial Park,* 372 Pa. 338, 345, 93 A. 2d 440; *Stafford v. Reed,* 363 Pa. 405, 407, 70 A. 2d 345.

The fact that the stock certificates were not endorsed by Collins would not defeat an otherwise valid gift: *Chapple's Estate,* 332 Pa. 168, 2 A. 2d 719; *Connell's Estate,* 282 Pa. 555, 128 A. 503.

The testimony of one witness as to the gift, if clear, certain and convincing, especially if corroborated by other circumstances, is sufficient to make out a prima facie case: Cf. *Flanigan v. Flanigan,* 115 Pa. 233, 9 A. 157; *Osterhout's Estate,* 148 Pa. 223, 23 A. 1068; *Rhodes v. Childs,* 64 Pa. 18; *Wells v. Tucker,* 3 Binney 366; *Weaver v. Welsh,* 325 Pa. 571, 191 A. 3.

The trial Judge who saw and heard the witnesses and who knew the quality and quantity of proof required to establish a gift mortis causa, felt that it was highly probable that Collins wanted Mrs. Johnson to have this property in the event of his death; and like the jury, the Judge believed the testimony of Cecil Johnson and accordingly refused a new trial. We agree with the lower court that all of the essential elements of a gift mortis causa were proved and that the

testimony was sufficiently clear, certain and convincing to warrant its submission to the jury.

Judgment affirmed.