**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3032
_____

ESTATE OF WILLIAM E. DEMUTH JR., DECEASED,
DONALD L. DEMUTH, EXECUTOR,
Appellant

v.

COMMISSIONER OF INTERNAL REVENUE
_____

On Appeal from the United States Tax Court
(Docket No. 19-18724)
U.S. Tax Court Judge:  Hon. Courtney D. Jones
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2023
_____

Before:  SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>.

(Filed:  July 12, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

The Estate of William DeMuth, Jr. ("Estate") appeals the United States Tax Court's order denying his petition challenging the Internal Revenue Service's ("IRS") notice of estate tax deficiency arising from the Estate's failure to include the value of several checks on the Estate tax return. Because the Tax Court properly found that the checks were not completed gifts and thus their value should have been included in the value of the gross estate, we will affirm.

I

In 2007, William DeMuth, Jr., ("Decedent") signed a power-of-attorney agreement appointing his son Donald DeMuth[1] as his agent. In that capacity, Donald made annual monetary gifts to family members from 2007 to 2014. The Decedent was diagnosed with an end-stage medical condition in early September 2015. On September 6, 2015, Donald wrote out eleven checks to family members totaling $464,000[2] from his father's investment account with the Mighty Oak Strong America Investment Company ("Mighty Oak") and mailed or personally delivered the checks to the payees. The Decedent died on September 11, 2015. Ten of the checks were paid from the Mighty Oak account to the respective payees after the Decedent's death.

As executor of the Estate, Donald filed an estate tax return in December 2016, which excluded the value of the ten checks from the Estate's assets. The IRS determined

---

[1] To avoid confusion, we refer to Donald DeMuth as Donald and William DeMuth, Jr. as the Decedent.

[2] The checks consisted of payments to family members each for $28,000 or less, and one payment of $240,000 to a savings plan.

that the Estate's return should have included the value of the checks and so it issued a notice of deficiency for estate tax due in the amount of $179,130.

The Estate petitioned the Tax Court for reconsideration of the deficiency. Before the Tax Court, the IRS agreed to exclude three of the checks from the total, which reduced the deficiency to $131,774.[3] The Tax Court held that the funds from the remaining seven checks were part of the Decedent's estate because the checks were not completed gifts under Pennsylvania law before the Decedent's death. Id. at 4-9.

The Estate appeals.

## II[4]

A federal estate tax is "imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001(a). The "taxable estate" for purposes of the estate tax is the value of the decedent's gross estate less any allowable deductions. Id. § 2051. The gross estate consists of the value of the decedent's property and interest in property at the time of the decedent's death, id. §§ 2031(a), 2033, including the "amount of cash belonging to the decedent at the date of his death, whether in his possession or in the possession of another, or deposited with a bank," 26 C.F.R. § 20.2031-5. In the case of gifts of such property, where "the donor has

___

[3] The Estate also conceded that a deficiency resulted from the Estate's understatement of $11,824 in taxable gifts for tax years 1999, 2001, 2012, and 2015.

[4] The Tax Court had jurisdiction pursuant to 26 U.S.C. §§ 6214(a) and 7442. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1). "We exercise plenary review over the Tax Court's conclusions of law, including its construction and application of the Internal Revenue Code. We review the Tax Court's factual findings for clear error." Estate of Thompson v. Comm'r, 382 F.3d 367, 374 n.12 (3d Cir. 2004) (citations omitted).

so parted with dominion and control as to leave in him no power to change its disposition . . . the gift is complete," and therefore the value of the gift is not includible in the gross estate. 26 C.F.R. § 25.2511-2(b).

A gift is "incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself." 26 C.F.R. § 25.2511-2 (c). We apply state law to determine when a gift in the form of a check is completed. See, e.g., Burnet v. Harmel, 287 U.S. 103, 110 (1932) ("[S]tate law creates legal interests but the federal statute determines when and how they shall be taxed."); Metzger v. Comm'r, 38 F.3d 118, 121 (4th Cir. 1994) ("We refer to state law to determine whether a donor has relinquished dominion and control over a gift in the form of a check[.]" (citing Estate of Dillingham v. Comm'r, 903 F.2d 760, 763 (10th Cir. 1990))); Rev. Rul. 96-56, 1996-2 C.B. 161 (noting local law applies to determine whether a check from a donor is a complete gift).

Under Pennsylvania law,[5] an inter vivos gift is a gift given with the intention of being completed when the donor is living. Titusville Tr. Co. v. Johnson, 100 A.2d 93, 96 (Pa. 1953). To find an inter vivos gift has been completed, there must be (1) an intention to make the gift and (2) an "actual or constructive delivery at the same time, of a nature sufficient to divest the giver of all dominion." Id. at 96-97. In the case of a check, delivery of the check alone does not complete the gift because the donor may revoke the

_____

[5] The parties agree that because the Decedent was domiciled in Pennsylvania at the time of his death, Pennsylvania state law controls.

4

gift up until the time it is deposited or cashed.[6]  In re Eshenbaugh's Estate, 174 A. 809,

811 (Pa. Super. Ct. 1934) (citations omitted); see also In re Kern's Estate, 33 A. 129, 129

(Pa. 1895) ("[T]he delivery of a . . . check is not an executed gift of the money, but

remains revocable, and will be revoked by the death of the promisor before actual

payment.").  This is consistent with Pennsylvania's Commercial Code, which allows for a

drawer of a check to stop payment on the check until the earliest of the drawer's bank

accepting, certifying, or making final payment of the check.  See 13 Pa. Cons. Stat.

§§ 3409, 4403(a), 4303(a).

Here, the seven checks at issue were all deposited and paid after the death of the

Decedent.  Because there had not been "actual or constructive delivery . . . of a nature

sufficient to divest the giver of all dominion," Titusville, 100 A.2d at 96-97, the checks

were still revocable at the time the Decedent died.  The Decedent therefore still

"reserve[d] the power to revest the beneficial title to the property in himself," 26 C.F.R.

§ 25.2511-2 (c), and thus the inter vivos gifts here were not completed and remained part

of the Estate.  See Estate of Gagliardi v. Comm'r, 89 T.C. 1207, 1213 (1987) (applying

Pennsylvania law and holding that checks delivered to the payees before, but paid after,

the decedent's death are part of the gross estate for federal estate tax purposes).[7]

---

[6] If, however, "the check is drawn for the whole and exact amount in the bank," it is deemed "an equitable assignment of the fund," and thus it is viewed as a completed gift.  In re Eshenbaugh's Estate, 174 A. 809, 811 (Pa. Super. Ct. 1934) (citations omitted).

[7] Courts of Appeals interpreting similar laws in other states have also held that checks delivered before a decedent's death but paid after were revocable at the time of his death and therefore are incomplete gifts that must be included in the estate.  See, e.g.,

The Estate argues that the seven checks at issue were properly excluded because they were given in contemplation of Decedent's death, and therefore were completed gifts in causa mortis. Under Pennsylvania law, gifts "causa mortis" are gifts "prompted by the [donor's] belief . . . that his death is impending, and [are] made as a provision for the donee if death ensues." Titusville, 100 A.2d at 96. Pennsylvania courts have found that where the circumstances support a finding of a gift causa mortis, checks delivered before, but paid after, the decedent's death are completed gifts. See, e.g., In re Estate of Smith, 694 A.2d 1099, 1102 (Pa. Super. Ct. 1997); In re Fleigle Estate, 13 Fiduc. 2d 141, 145-47 (Pa. C.C.P. 1993), aff'd on other grounds, In re Estate of Fleigle, 664 A.2d 612 (Pa. Super. Ct. 1995).

A gift causa mortis differs from an inter vivos gift in that "it is made when the donor believes he is about to die, and is revocable should he survive." Estate of Smith, 694 A.2d at 1102 n.2. To determine whether a gift was given in causa mortis, one must show that "at the time of the alleged gift, the decedent intended to make a gift, the decedent apprehended death, the res of the intended gift was either actually or

---

Metzger v. Comm'r, 38 F.3d 118, 121 (4th Cir. 1994) (observing that under Maryland law, a gift in the form of a check is an incomplete gift and includible in the gross estate because "the delivery of a personal check is only conditional payment, and the gift remains incomplete until the donee presents the check for payment and the check is accepted by the drawee bank" (quoting Malloy v. Smith, 290 A.2d 486, 487-88 (Md. 1972))); Estate of Dillingham v. Comm'r, 903 F.2d 760, 763 (10th Cir. 1990) (same, where Oklahoma law allows a decedent to "retain[] the power to stop payment and thereby defeat the claims of the donees from the time the checks were delivered . . . until they were cashed"); Rosano v. United States, 245 F.3d 212, 213 (2d Cir. 2001) (same, applying New York law which gives the decedent "the ability, at any time until the checks [are] paid, to order that payment on the checks be stopped").

constructively delivered, and death actually occurred." Id. at 1101. Whether a gift was given in causa mortis thus "depends primarily upon the state of the donor's mind." Titusville, 100 A.2d at 97. To determine this, "the attendant circumstances should be considered, including the nature and extent of his sickness, illness or injuries, his physical condition, his conduct, and anything that was said to and by him." Id.

The Estate has not shown that the Decedent wrote the checks as gifts in causa mortis. The only evidence arguably supporting this point is that the Decedent was diagnosed with an end-stage medical condition in early September 2015, and that the yearly gifts given to family members were generally given in December rather than September. There is no evidence, however, that indicates the Decedent directed Donald to distribute the September 2015 checks in contemplation of his death.[8] In fact, the record reflects that the only directions the Decedent gave to Donald as his agent was that Donald was authorized to "give gifts to Decedent's issue in an amount not to exceed the annual exclusion from the federal gift tax," and to "give gifts to any permitted donee for tuition." App. 18-19. As such, the Estate's argument that the checks were properly completed gifts causa mortis fails because there is nothing to show that the Decedent contemplated death when the checks were written on his behalf. Thus, the value of the seven remaining checks was improperly excluded from the gross estate.

---

[8] The Estate seems to make an argument that Donald expressed sufficient donative intent to support a gift given in causa mortis because "he knew of his father's end-stage medical condition." Appellant Br. at 6. The only relevant state of mind, however, was the Decedent's, see, e.g., Titusville, 100 A.2d at 96 (noting that a gift causa mortis is made "when the donor believes he is about to die"), and so Donald's state of mind is irrelevant to the question of whether the gifts were given in causa mortis.

## III

For the foregoing reasons, we will affirm.