Schappell Estate.

Argued January 4, 1967.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Michael A. O'Pake,* with him *R. Solomon Bear, John E. Marx,* and *Marx, Ruth, Binder and Stallone,* for appellants.

*Charles H. Weidner,* with him *John D. Glase,* and *Stevens & Lee,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 14, 1967:

Isaac D. Schappell died in his 80th year on November 2, 1964, leaving a will dated January 27, 1954. He had been married twice; his first wife was Nora, who died in 1909, and his second wife Stella, who died in 1956. Isaac had one child by Nora, a daughter also named Nora. Daughter Nora was born in 1909 and died in 1933, leaving to survive her a daughter Roselyn (now Dunkelberger), who survived both her mother and her grandfather Isaac. Isaac had five children by his second wife Stella. Stella predeceased Isaac but was living at the time he made his will; their five children survived him.

In Item 1 of his will testator gave a legacy of $300 to his granddaughter Roselyn. He then made the following disposition of his residuary estate: "ITEM 2: As to the rest residue and remainder of my estate, either real, personal, or mixed, I give, devise, and bequeath to my dear wife Stella J. Schappell, however should my wife Stella J. Schappell predecease me in death I then give, devise and bequeath the same *to my children,* same to be divided equally share and share alike, *and if any of my children shall predecease me* in death, *his or her share shall be divided equally amongst their issue.*"*

---

* Italics, ours.

At the audit Stella's five children claimed the entire residuary estate ($38,373.28), contending that Roselyn was entitled only to the legacy of $300 and was not entitled to share in the residuary estate. Roselyn claimed the $300 legacy *and also her share, viz., one-sixth, of the residuary estate.* The Orphans' Court agreed with Roselyn, and from that Court's decree of distribution, Stella's five children took this appeal.

In *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, the Court, quoting from our prior decisions, said (page 586): ". . . ' "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) *that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain.* [Cases cited.]" ' "*

Placing ourselves, as we must, in the armchair of the testator, we note that at the time he executed his will (1) Stella and her five children were living and (2) Roselyn, his grandchild through his first wife Nora, was living. According to the stipulation of the parties, Isaac's relations with his granddaughter Roselyn were "harmonious." We are informed that the will was written by testator without the aid of an attorney. It is therefore reasonable to assume that the testator was unfamiliar with any technical rules of construction.

We believe the testator's language, meaning and intent are clear from his will, without resort to any technical rule of construction. With the exception of the $300 legacy for Roselyn, testator treated each branch

---

* Italics, ours.

of his family equally, as most parents wish to do: *Houston Estate,* 383 Pa. 466, 470, 119 A. 2d 304. He gave his residuary estate to his children in equal shares, and if any of his children predeceased him, ". . . his or her share shall be divided equally amongst their issue." It was not unnatural to give $300 to Roselyn, a granddaughter who for many years did not have the benefit of the care and financial help of a parent, which the five children of Stella had. Far more important, if there was any real doubt about the testator's meaning and intent, the Orphans' Court's interpretation produces virtual equality, while the interpretation sought by the five children of Stella would produce gross inequality in Isaac's family—a result to be avoided if reasonably possible. Under the Orphans' Court interpretation of Isaac's will, each child of Isaac and Stella would receive (approximately) $6400 and Roselyn would receive (approximately) $6700; under the interpretation sought by Stella's five children, Roselyn would receive $300 and each of Stella's children would receive (approximately) $7700, or twenty-five times as much as Roselyn. If there is any real doubt about the meaning and intent of the testator's will, and we don't believe there is, (1) the interpretation which gives almost perfect equality is to be preferred, we repeat, to one that gives gross inequality: *Laughlin Estate,* 354 Pa. 43, 50, 46 A. 2d 477; and (2) the construction is preferred which most nearly conforms to the intestate laws: *Park's Estate,* 4 Pa. County Ct. 560, 562 (Judge PENROSE).

Appellants place their sole reliance upon a highly technical rule of construction which was originally laid down in *Christopherson v. Naylor,* 1 Mer. 321, 35 Eng. Rep. 693 (Ch. 1816). A dozen or more Pennsylvania cases have considered the application of this rule without mentioning its origin—it will suffice to say

that these cases are irreconcilable, some applying the rule and some rejecting it. In the present case, we find that testator's intention is clear, and therefore there is no necessity or justification for resorting to technical rules of construction.

Decree affirmed; appellants to pay their and appellee to pay her costs.

Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.