383 A.2d 920

**ESTATE of John P. SYKES, Deceased.**

**Appeal of Robert SYKES, attorney-in-fact for Benjamin Sykes, intestate heir of John P. Sykes, Deceased.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1978.

Decided March 23, 1978.

256

Bruce D. Lombardo, Philadelphia, for appellant.

Annis K. S. Delamere, John S. Pierson, Richard M. Gillis, Jr., Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

■ We hold today that where a testator has not clearly expressed an intention to limit inheritance under his will to individuals of blood descent, it is presumed that he intended to include adopted children as beneficiaries of a bequest to "issue."

On December 26, 1935, testator, John Sykes, executed a will in which he bequeathed part of his estate to his niece, Annis Kershaw Sykes, and the residue to Annis Kershaw Sykes and Girard Trust Company in trust for the benefit of Annis Kershaw Sykes for her life. The will empowered Annis Kershaw Sykes to withdraw in her discretion up to fifty per cent of the corpus of the trust for "her comforts and needs." The instrument further provided that Annis Kershaw Sykes

"may . . . appoint, limiting the persons to whom my said niece may appoint, however, to *blood relatives* of mine or of my said niece, Annis Kershaw Sykes; and in the event that my said niece shall fail to appoint as hereinbefore authorized, to pay over and distribute such corpus or principal unto the *issue* of my said niece, per stirpes and not per capita." (emphasis added)

Annis Kershaw Sykes married in 1940 and remained married until her death on March 22, 1974. No children were born of that marriage. On June 1, 1943, however, she and her husband adopted Annis Kershaw Sykes Pierson 2d, a one month old girl and, in 1946, John Sykes Pierson, a six year old boy. John Sykes died on August 16, 1942.

Upon the death of Annis Kershaw Sykes, Benjamin P. Sykes, an intestate heir of testator, objected to distribution of the corpus of the trust to the adopted children of Annis Kershaw Sykes, on the ground that adopted children were not "issue" as designated in the will. The orphans' court division of the court of common pleas dismissed this objection and ordered distribution of the corpus to the adopted children. We affirm.[1]

 "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." *Hamilton Estate,* 454 Pa. 495, 498, 312 A.2d 373, 374 (1973); accord, *Blough Estate,* 474 Pa. 177, 378 A.2d 276 (1977); *Hill Estate,* 432 Pa. 269, 247 A.2d 606 (1968). To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question. *Hamilton Estate,* supra; *Chambers Estate,* 438 Pa. 22, 263 A.2d 746 (1970); *Hill Estate,* supra. Should the testator's intent remain uncertain, a court resorts to canons of construction to supply the testator's likely intent. *Blough Estate,* supra; *Grimm Estate,* 442 Pa. 127, 275 A.2d 349 (1971); *Chambers Estate,* supra. The intent of a testator must appear with reasonable certainty, such that there can be little doubt of his intent. If, from the language of the document, the scheme of distribution, and the relevant facts and circumstances, a court cannot determine a testator's intent with reasonable certainty, it must resort to canons of construction. E. g., *Schappell Estate,* 424 Pa. 390,

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

227 A.2d 651 (1967); *Houston Estate,* 414 Pa. 579, 201 A.2d 592 (1964).[2]

Here, the language of testator's will does not disclose testator's intent with reasonable certainty. It specifically limited Annis Kershaw Sykes's power of appointment to "blood relatives" of either testator or Annis Kershaw Sykes. It did not so limit the class to whom the corpus would pass in default of exercise of the power of appointment. Rather, it directed that the corpus would then pass to the "issue" of Annis Kershaw Sykes. This variance is subject to conflicting interpretations. On the one hand, it could be argued that the initial reference to "blood relatives" modifies the subsequent use of "issue." Having indicated his desire to confine distribution to blood relatives, testator, under this view, saw no need to repeat his intention when specifying those to whom the estate would pass if his niece did not exercise her power of appointment.

On the other hand, it could be said that testator knew his intention well enough to specify "blood relatives" as the sole objects of the power to appoint, and therefore must have intended to remove that restriction in the succeeding clause when he failed to specify that only blood descendants would take if the power to appoint were not exercised. By this interpretation, testator may have sought to permit Annis Kershaw Sykes to dispose of the corpus to "blood relatives" of herself or of testator, or to her "issue," including adopted children, if any, as she saw fit. Thus, in her discretion, she

2. Varying formulations of this standard have been offered. The most common is that such canons are invoked where the language of the document is "ambiguous or conflicting or the testator's intent is for any reason uncertain," *Schappell Estate,* 424 Pa. 390, 392, 227 A.2d 651, 652 (1967) (no "real doubt" of testator's intent); accord, e. g., *Houston Estate,* 414 Pa. 579, 201 A.2d 592 (1964) (testator's intent "clear and certain"). Other cases have required that the language be "plain and clearly disclose" the testator's intent, *Grimm Estate,* 442 Pa. 127, 275 A.2d 349 (1971); that the intent be "clear," *Hill Estate,* 432 Pa. 269, 247 A.2d 606 (1968), and that there be a "clear" or "real expression" of the testator's intent. *Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion) (quoting *Fownes Trust,* 421 Pa. 476, 220 A.2d 8 (1966) (dissenting opinion of Roberts, J., joined by Musmanno, J.)). We believe that these cases, despite the variations in wording, stand for the proposition asserted.

could appoint to "blood relatives;" if she desired to ensure that her children, by blood descent or by adoption, should take upon her death, she need only decline to exercise her power of appointment.

Other language in the will does not reveal with reasonable certainty testator's intent. Testator devised the residue of his estate in trust to "Annis Kershaw Sykes, her heirs and assigns," and the Girard Trust Company. This phrase, "heirs and assigns," braces neither interpretation. The words are words of limitation, not of purchase. That is, they describe the nature of the estate given rather than the persons who are to take. *Butler Estate,* 364 Pa. 279, 72 A.2d 110 (1950); *Estate of Witte,* 102 Pa.Super. 535, 157 A. 328 (1931).

Testator's scheme of distribution also does not establish with reasonable certainty testator's intent. Testator apparently bore a special affection for Annis Kershaw Sykes. He named her co-executor and co-trustee, permitted her alone to draw from the corpus of the trust, entrusted her with exclusive power to appoint, and provided that the corpus, upon failure to appoint, would pass to her "issue." To some degree, bestowal of such favor to Annis Kershaw Sykes indirectly extended to her family, implying that testator intended to confer benefits upon all her family, without regard to the blood relation of her children. It is also plausible, however, that testator did not intend to benefit persons other than Annis Kershaw Sykes. In these circumstances, we cannot say that the scheme shows with reasonable certainty testator's intent to include adopted children in the term "issue."

Nor does the record present facts or circumstances justifying a particular view. At the time of execution of the will, Annis Kershaw Sykes was not married. So far as the record shows, testator had no reason to believe that Annis Kershaw Sykes would not bear children or that she would adopt children after his death. See *Chambers Estate,* supra (testator's intent established where he knew daughter was infertile and had adopted one child at time of will's execution).

At best, testator's ignorance of these developments suggests that he gave no thought to whether adopted children would take under his will.

■ Accordingly, the will must be interpreted in light of canons of construction. See *Hamilton Estate,* supra; cf. *Estate of Clarke,* 460 Pa. 41, 331 A.2d 408 (1975) (canon of construction employed where Court concluded that bequest to specifically named grandchildren did not clearly demonstrate intent of testator to exclude grandchild born after testator's death). We hold that the canon of construction which best serves to interpret this will is a presumption that testator intended to include children by adoption as well as by blood descent when he directed that the corpus should pass to the "issue" of Annis Kershaw Sykes. *In re Heard's Estate,* 49 Cal.2d 514, 319 P.2d 637 (1957); *In re Thompson,* 53 N.J. 276, 250 A.2d 393 (1969); *In re Park's Estate,* 15 N.Y.2d 413, 260 N.Y.S.2d 169, 207 N.E.2d 859 (1965); cf. *Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion) (same rule for bequest to "children").

This presumption "reflects the feeling and attitude of the average man" that adopted children are as much a part of the family as are natural children. *In re Coe,* 42 N.J. 485, 489, 201 A.2d 571, 574 (1964) (bequest to "children"). Accordingly, "the sound approach . . . [is to] deem adoptees as embraced within such general designations as 'issue' or 'children,'" *Tafel Estate,* supra, 449 Pa. at 452, 296 A.2d at 802 (plurality opinion) (quoting *Fownes Trust,* 421 Pa. 476, 220 A.2d 8 (1966) (dissenting opinior of Roberts, J., joined by Musmanno, J.)), unless the testator unambiguously indicates his intention to the contrary. In *Tafel,* involving a bequest to "children," Chief Justice Jones stated:

> ". . . there is no sound basis for concluding that the settlor, by employing those terms ['issue' and 'children'] intended to exclude adopted children from sharing in his bounty. It is far more likely, and more reasonable to assume, that the absence of an express direction with respect to the matter indicates that the settlor failed to advert to the possibility of adopted children, their inclu-

sion or exclusion, and, accordingly, expressed no implicit direction one way or the other. . . . [A presumption that adopted children were included] would resolve those cases in which no *explicit* intent is expressed in the most socially desirable manner." (emphasis in original)

Id. 449 Pa. at 451, 296 A.2d at 802.

This presumption is consistent with statutory rules of interpreting wills. 20 Pa.C.S.A. § 2514(7) (as amended Supp. 1977) provides:

"§ 2514 Rules of interpretation

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

(7) Adopted children.—In . . . construing a will making a devise or bequest to a person . . . described by relationship to the testator or to another, any adopted person shall be considered the child of his adopting parent . . . , except that, in construing the will of a testator who is not the adopting parent, an adopted person shall not be considered the child of his adopting parent or parents unless the adoption occurred during the adopted person's minority . . . ."

Thus, had testator's will been subject to this statute,[3] the adopted children would have been considered "issue" of Annis Kershaw Sykes unless a contrary intention appeared.[4] We see no reason why the same rule of construction should not apply to testator's will. Interpreting a similar statute, the Supreme Court of New Jersey stated, "our statute belatedly recognized relationships which men have always assumed, and translated into a rule of law what the Legisla-

---

3. This statute was amended in 1976. Formerly, the statute did not extend to children adopted after death of the testator. Thus, this provision is inapplicable to the will of John Sykes.

4. Both children of Annis Kershaw Sykes were minors when adopted. We therefore need not determine whether the presumption applied here obtains when an adoption occurs after a child's minority. We note, however, that the plurality in *Tafel Estate,* supra, applying an identical presumption where the bequest was to "children," endorsed a requirement that the adoption occur during the child's minority.

ture found to be their common expectation and wish." *In re Coe,* supra, 42 N.J. at 489, 201 A.2d at 574.

The Adoption Act provides further evidence of the Legislature's intent that all children, natural or adopted, stand equal in the eye of the law. The Act of July 24, 1970, P.L. 620, art. V, § 502, 1 P.S. § 502 (Supp.1977), states that an adopted child "shall have all the rights of a child and heir of the adopting parent . . . ." Our case law recognized the import of this provision as early as 1905. See *Peterson's Estate,* 212 Pa. 453, 61 A. 1005 (1905) (interpreting Act of 1855); *Collins Estate,* 393 Pa. 519, 143 A.2d 45 (1958). This legislative policy supports the presumption we adopt today. Note, Right of Adopted Children to Take Under a Will as "Lawful Issue," 22 So.Cal.L.Rev. 89, 93 (1948); cf. *Tafel Estate,* supra.

It is true that many of our cases looked askance at the rights of adopted children to bequests. Thus, it was long stated that the term "issue" was to be construed as excluding all but natural descendants unless the testator expressed his intention to the contrary. E. g., *Bell Estate,* 439 Pa. 433, 267 A.2d 862 (1970) (concurring opinion); *Benedum Estate,* 427 Pa. 408, 235 A.2d 129 (1967) (plurality opinion) (dictum); *Fownes Trust,* supra (dictum); *Pennington Trust,* 421 Pa. 334, 219 A.2d 353 (1966); *Howlett Estate,* 366 Pa. 287, 77 A.2d 390 (1951) (dictum). These decisions relied upon the rationale that

" . . . the 'call of the blood' is one of the most firmly rooted instincts of human nature . . .. In the absence of a plain legislative mandate to the contrary, a stranger to the adoption proceedings should not have his property diverted from its natural course of descent to the heirs of his blood . . . ."

*Cave's Estate,* 326 Pa. 358, 359, 192 A. 460, 461 (1937).

No longer can that rationale serve to relegate adopted children to second class status. This line of cases was discredited in *Tafel Estate,* supra (plurality opinion). Contrary to legislation and "[the] attitude of the average man," *In re Coe,* supra, the rationale must be rejected. Many of

the cases purporting to rely upon it did so only in dictum, see *Benedum Estate,* supra; *Fownes Trust,* supra; *Howlett Estate,* supra; those decisions holding that the term "issue" shall be presumed to include only natural descendants, we expressly overrule. Therefore, we construe testator's will according to the canon of construction we announce today. See *In re Heard's Estate,* supra; *In re Thompson,* supra; cf. *Tafel Estate,* supra.

■ Moreover, the presumption does not preclude a testator from limiting beneficiaries of his estate to blood descendants. So long as the testator's intent to exclude adopted children appears with reasonable certainty, that intent must be respected by the courts. *Benedum Estate,* supra (opinion of Bell, C. J., joined by Cohen and Eagen, JJ.; opinion of Roberts, J., joined by Jones, J.) (bequest to "issue" excluded adopted children where will defined "issue" as blood descendants); see *Tafel Estate,* supra. The presumption simply recognizes in law the well established fact that most people regard adopted children as much a part of the family as are natural children. Cf. *Collins Estate,* supra (term "descendant" does not exclude biologically unrelated family members); see generally, Note, Adopted Children Other Than Testator's Presumed To Take As "Children" Under His Will, Regardless Of Time Of Adoption, 77 Dick.L.Rev. 415, 424 (1973).

The result we reach is in harmony with another canon of construction. "When a decedent drafts a last will and testament, he is presumed, in the absence of an indication to the contrary, to have intended to dispose of his entire estate and not to die intestate as to any part of it and a construction should be adopted that would avoid an intestacy unless such construction would do violence to the language of the will." *Hill Estate,* supra, 432 Pa. at 272–73, 247 A.2d at 609 (quotation marks omitted); accord, *Stancik Estate,* 451 Pa. 20, 301 A.2d 612 (1973); *Farrington Will,* 422 Pa. 164, 220 A.2d 790 (1966). If the adopted children of Annis Kershaw Sykes could not take under the will, the corpus of the trust would pass to testator's intestate heir, Benjamin P. Sykes,

who is not a named beneficiary in testator's will. Our interpretation of the instrument avoids this disfavored result.

Decree of the orphans' court affirmed. Each party pay own costs.

POMEROY, J., did not participate in the decision of this case.

EAGEN, C. J., dissents.