626 A.2d 602

**ESTATE OF Deborah Norris RUSH, Deceased.**

**Appeal of Lockwood RUSH, Executor and Accountant of the Estate of Deborah Norris Rush, Deceased, Appellant.**

Superior Court of Pennsylvania.

Argued April 15, 1993.

Filed June 14, 1993.

120

Alfred A. Gollatz, West Chester, for appellant.

Louis C. Washburn, Philadelphia, for Jonathan Rush, participating party.

Before CAVANAUGH, BECK and JOHNSON, JJ.

JOHNSON, Judge.

Lockwood Rush, accountant and executor for the estate of his mother, Deborah Norris Rush (Testatrix), appeals from the order providing for final distribution of the Rush Estate. We affirm.

On October 23, 1991, Lockwood Rush filed the First and Final Account of his administration of the Rush Estate, along with a Petition for Adjudication and Statement of Proposed Distribution. The Proposed Distribution would have awarded the residue of the Testatrix' estate to Lockwood and his sole surviving brother Stockton Rush. Jonathan Rush, only son of the Testatrix' predeceased son John, filed an Objection to the Proposed Distribution, seeking a one-third distribution of the residuary estate and the payment of his attorney's fees. Following a hearing, the trial court entered an Adjudication awarding Jonathan one-third of the residuary estate but denying his claim for attorney's fees. Each party filed exceptions to the Adjudication, which were briefed and argued before the trial court. The trial court then issued its Order and Opinion, upholding its previous distribution scheme and ordering each side to pay its own attorney's fees. This appeal followed.

■ Our standard of review in a will contest is limited to determining whether the trial court's findings of fact are supported by sufficient evidence and whether the trial court committed an error of law or an abuse of discretion. *In re Estate of Dex*, 408 Pa.Super. 391, 596 A.2d 1143 (1991); *In re Estate of Simpson*, 407 Pa.Super. 1, 595 A.2d 94, *appeal denied*, 529 Pa. 622, 600 A.2d 538 (1991).

■    The issue in dispute in the present case is the interpretation of Article IV B of the Testatrix' will which awards the residue of her estate. That section states:

IV.   Residuary Estate: I give:

B.   The balance of the residue of my estate, real and personal, in equal shares to such of my sons as survive me by thirty days; provided that if a son does not so survive me but leaves descendants who survive me, such descendants shall receive, per stirpes, the share that son would have received had he so survived me.

All parties to this litigation agree that the above provision of the Testatrix' Will is unambiguous and requires no introduction of extrinsic evidence in order for the court to interpret its meaning, as a matter of law. *See, e.g., In re Estate of Kelly,* 473 Pa. 48, 373 A.2d 744 (1977). The parties disagree, however, on the meaning which should be attributed to Article IV B.

Lockwood contends that the clause creates a class of beneficiaries consisting only of the Testatrix' sons who could have survived her by thirty days. He maintains that since John Rush, Jonathan's father, had predeceased the Testatrix at the time of the drafting of the Will, he could not be included as a member of the class of intended beneficiaries under the residuary clause. Lockwood further alleges that the proviso which allows recovery for the descendents of a son who doesn't survive for thirty days after the Testatrix' death, only applies to the issue of those sons who were living at the time of the Will's drafting and could have potentially outlived the Testatrix for thirty days. Lockwood interprets the proviso in Article IV B as merely an articulation of Pennsylvania's anti-lapse statute, 20 Pa.C.S. § 2514(9).

To support these contentions, Lockwood looks to Article I of the Will which gives all of the Testatrix' personal property to "such of my sons as survive me by thirty days." All parties, as well as the trial court, agreed that the Testatrix' predeceased son John was not a legatee under this provision of the Will. They also concur that the anti-lapse statute, 20 Pa.C.S. § 2514(9), if applied to Article I, would only preserve that

portion of the estate for the issue of Lockwood and Stockton, the Testatrix' two surviving sons. However, the trial court, when considering Lockwood's argument, concluded that the additional language in Article IV B was indicia of the Testatrix' intent to produce a different result for the distribution of the residue of her estate, than was intended for Article I. We agree.

When interpreting a will, every word and clause in a will must be given effect if reasonably possible, and the court cannot ignore language of the testatrix, except where the language of the entire will demonstrates that the language in question was inadvertently used and did not express the testatrix' true intent. *Estate of McKenna,* 340 Pa.Super. 105, 489 A.2d 862 (1985). A will must be read to give effect to every portion of it, so as not to render any provision nugatory and futile. *Estate of Williams by Lorgan v. Williams,* 357 Pa.Super. 476, 516 A.2d 359 (1986). To ascertain testamentary intent, the court must focus first and foremost on the precise wording of the will, and resort to canons of construction only if the language is ambiguous or conflicts with the testator's intent. *In re Estate of Wainwright,* 417 Pa.Super. 335, 612 A.2d 509 (1992).

The trial court, in giving effect to the provision in Article IV B which provided for a *per stirpes* recovery by the children of any predeceased son, was clearly in conformance with the precedent in this Commonwealth regarding the interpretation of wills. Here, there was no allegation or suggestion, after an examination of the four corners of the Will, that the language used in Article IV B did not express the true intent of the Testatrix. If the trial court accepted Lockwood's reasoning that Article I and Article IV B included the same class of beneficiaries, the additional clause in Article IV B would be rendered meaningless.

Lockwood further contends, citing *McCarty's Estate,* 138 Pa.Super. 415, 10 A.2d 790 (1940), that since his brother John was deceased at the time of the drafting of the Will, his offspring must, as a matter of law, be excluded from recover-

ing under the language of the residuary clause. In *McCarty's Estate*, this Court addressed whether the children of the testator's son, who died eighteen years prior to the execution of the will, were legatees under the residuary clause. That clause stated: "all the rest, residue and remainder of my estate I give and bequeath to my children in equal shares absolutely, the child or children of any deceased child to take its parent's share." *Id.* at 416, 10 A.2d at 791. In *McCarty's Estate*, this Court held that the class of legatees intended under the residuary clause only included the testator's children who were living at the time of the drafting of the will. Consequently, as the testator's predeceased son was not a primary legatee under the will, his children were not entitled to take a share of the residue of the estate. *Id.* at 420, 10 A.2d at 792.

While the facts of the present case closely parallel those of *McCarty's Estate*, the interpretation, by our supreme court, of such residuary clauses has changed and developed in this Commonwealth since 1940. In *In re Estate of Schappell*, 424 Pa. 390, 227 A.2d 651 (1967), our supreme court addressed the identical issue as is now before us. There, the child of the testator's predeceased daughter claimed a share in the residue of the estate. In that case, as in the present case, the testator's predeceased child had died prior to the drafting of the will. The residuary clause in *Schappell* stated:

> ITEM 2: As to the rest residue and remainder of my estate, either real, personal or mixed, I give, devise, and bequeath to my dear wife Stella J. Schappell, however should my wife Stella J. Schappell predecease me in death I then give, devise, and bequeath the same *to my children*, same to be divided equally share and share alike, and *if any of my children shall predecease me* in death, *his or her share shall be divided equally amongst their issue.*

*Id.* at 391, 227 A.2d at 652 (Emphasis supplied by the Supreme Court).

In *Schappell*, our supreme court held that the language of the residuary clause clearly reflected the testator's intent to bequeath the residue of his estate to all of his children or their

issue. *Id.* at 393, 227 A.2d at 653. The court stated further, that even if there were some doubt as to the intent of the testator's language, the interpretation which gives almost perfect equality is to be preferred to one that gives gross inequality. *Id.* at 393, 227 A.2d at 653.

Our supreme court again had the opportunity to address this issue in *Estate of McAfee,* 463 Pa. 250, 344 A.2d 817 (1975). In that case, the grandchildren of the testatrix' predeceased child claimed a share in her estate. The predeceased child died sixteen years prior to the execution of the will. The testatrix' holographic will stated:

> This is my wish and desire all personal and realstate [sic] property I leave to my children to dispose of as they see fit. After Thomas my son has been libiraly [sic] payed [sic] for careing [sic] for me the remainder devided [sic] among the other children. In case any of them become deceased before me their children to claim his or her share.

*Id.* at 252, 344 A.2d at 818. In *McAfee,* the surviving children claimed that the predeceased child was properly excluded as a legatee because he was deceased at the time that the will was drafted. The surviving children cited to the technical rules of will construction as articulated in *Christopher v. Naylor,* 1 Mer. 321, 35 Eng.Rep. 693 (Ch.1816) to support this contention.

The court in *McAfee* articulated the standard under which it would interpret the testatrix' will as:

> (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the will and (b) his scheme of distribution and (c) the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain.

*Id.,* at 253, 344 A.2d at 819.

There, our supreme court, after examining the language of the testatrix' will, concluded that the will was unambiguous

and that any reference to the technical rules of construction was unnecessary. The court also concluded that the clear intent of the testatrix' language was to include all of her children or their issue as beneficiaries under the will. *Id.* The court also indicated that its interpretation of the will produced virtual equality while the result proposed by the surviving children produced gross inequality. *Id.* at 255, 344 A.2d at 819. The *McAfee* court concluded that while the testatrix was free to confer her bounty unequally or discriminatorily, inequality or discrimination would not be presumed unless the intention to do so is manifest. *Id.* at 255, 344 A.2d at 819.

We will now examine the case before us, in light of the above precedents. As all parties concede that the language of the Will is unambiguous, there is no need to resort to the statutory canons of construction in order to interpret Article IV B. *See McAfee, supra;* 20 Pa.C.S. § 2514. Here, as in *Schappell* and *McAfee,* the Testatrix' Will was executed after the death of her son John. After an examination of the language of the residuary clause, we conclude that the record supports the trial court's findings that the Testatrix intended the residue of her estate to benefit all of her children or their issue. Under such an interpretation, Jonathan will take his deceased father's share by representation under the Will. While we conclude that the intent of the Testatrix is clear, even if there were any doubt, the trial court's interpretation of the residuary clause produces virtual equality among the Testatrix' issue while Lockwood's interpretation produces gross inequality. We are not free to presume such a discriminatory result absent the Testatrix' manifest intent to achieve such a purpose. *McAfee* at 255, 344 A.2d at 819.

As we conclude that the trial court committed neither an abuse of discretion nor error of law, the order and decree of distribution of the Rush Estate is affirmed.

Order Affirmed.