In re ESTATE OF Cecelia PHILBIN.

Appeal of Patrick Pratico.

Superior Court of Pennsylvania.

Argued April 17, 2002.
Filed Sept. 26, 2002.

Todd Johns, Archbald, for appellant.

James F. Rohrbeck, Scranton, for appellee.

Before: JOYCE, BECK and POPOVICH, JJ.

OPINION BY BECK, J.:

¶ 1 In this will contest, appellant Patrick Pratico [1] appeals the court decree entitling him only to specific shares of stock and growth attributable to those shares from the estate of Cecelia Philbin. The decree also directed that remaining shares be distributed to the residuary beneficiaries. We apply section 2514(17) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 101, et seq. ("Probate Code"), and determine that under the will Pratico is entitled only to the specific shares of stock bequeathed to him and the growth of the decedent's holding attributable to the specific shares. We affirm the trial court's decree.

¶ 2 Appellant Pratico is the executor of the estate of Cecelia Philbin who died on March 6, 1999 leaving a last will and testament dated April 8, 1997. In her will Cecelia Philbin named appellee Dorothy

---

1. It appears appellant's name was incorrectly spelled on the caption.

Worboys as one of the two residuary beneficiaries. The will provided, "To Pat (Pasco) Pratico—100 shares of Olyphant Bank stock # 162–# 360, each 50 shares." The date of certificate 162 was 1984 and the date of 360 was 1986. At the time of her death and at the time she executed her will, Philbin held additional shares of stock in Olyphant Bank. In addition to the 100 shares bequeathed to Pratico, Philbin held a certificate numbered 1058 and dated March 1, 1995 with 1,900 shares and certificate numbered 1675 and dated January 28, 1997 with 2000 shares. Subsequent to the execution of the will, all four certificates representing 4000 shares in Olyphant Bank were exchanged through a merger for 2756 shares of stock in First Liberty Bank bearing the certificate number 1170. Following her death, Philbin's estate received 8268 shares of First Liberty Bank stock represented by certificate number 3554, as a result of a four for one stock split.

¶ 3 Pratico filed a First and Final Accounting for the estate arguing that all 8268 shares of stock in First Liberty Bank should be distributed to him. Appellee Dorothy Worboys as a residuary beneficiary filed an objection arguing that Pratico should only receive 275.6 shares of First Liberty Bank stock, which represented the number of shares received in exchange for the original 100 shares of Olyphant Bank stock bequeathed to him. Worboys argued that the 100 shares of the Olyphant Bank stock were exchanged for 100 shares of Upper Valley stock which were exchanged for 68.9 shares of First Liberty Bank stock. The First Liberty Bank stock went through a stock split on October 15,

1999, and became the 275.6 shares of First Liberty Bank stock.

■ ¶ 4 On June 7, 2001, the trial court issued an Adjudication and Decree Nisi sustaining Worboys's objections. The court ordered that 275.6 shares be distributed to Pratico and the remaining shares of First Liberty Bank stock be distributed in equal shares to the residuary beneficiaries. A Final Decree was entered on June 19, 2001, in which the trial court confirmed absolutely the Adjudication and Decree Nisi. This appeal followed.[2]

¶ 5 Pratico argues that the trial court erred in sustaining Worboys's objections. He insists he should be awarded the entire amount of stock held by the estate in First Liberty Bank because it was derived solely from multiple stock splits from Philbin's ownership of the 100 shares of Olyphant Bank stock bequeathed to him and because he is the only named beneficiary of Philbin's shares of Olyphant Bank stock. Pratico relies on 20 Pa.C.S.A. § 2514(17) to support his argument.

¶ 6 Section 2514(17) provides that:

[i]f the testator intended a specific bequest of securities owned by him at the time of the execution of his will, rather than the equivalent value thereof, the legatee is entitled only to:

(i) as much of those securities as formed a part of the testator's estate at the time of his death;

(ii) any additional or other securities issued by the same entity thereon and owned by the testator by reason of stock dividend, stock split or other action by the entity, excluding any

---

**2.** Pratico filed his notice of appeal on July 2, 2001, following the trial court's June 19th Final Decree. In his notice of appeal appellant states that he is appealing from the trial court's earlier Adjudication and Decree Nisi. While appellant technically should have ap-

pealed from the trial court's Final Decree, filed on June 19th, we find this fact of no consequence because the Final Decree merely confirmed the Adjudication and Decree Nisi and made no additional findings or conclusions.

acquired by exercise of purchase options for more than a fractional share; and

(iii) securities of another entity received thereon or in exchange therefor and owned by the testator as a result of a merger, consolidation or reorganization of the entity or other similar change.

20 Pa.C.S.A. § 2514(17).

■ ¶ 7 Our standard of review in a will contest is limited to determining whether the trial court's findings of fact are supported by sufficient evidence and whether the trial court committed an error of law or an abuse of discretion. *Estate of Rush,* 426 Pa.Super. 119, 626 A.2d 602 (1993). It is well established that "the testator's intention is the polestar in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words." *Estate of Zucker,* 761 A.2d 148, 150 (Pa.Super.2000)(quoting *Houston's Estate,* 414 Pa. 579, 586, 201 A.2d 592, 595 (1964)).

¶ 8 The trial court concluded that what Philbin intended to give Pratico was stated precisely and without any ambiguity. The court found that at the time Philbin executed her will, she had four distinct certificates of stock in Olyphant Bank, that the specific bequest to Pratico was of only two certificates representing 100 shares and that there is no indication in the will that the additional 3900 shares represented by certificates 1058 and 1675 were to be included in the specific bequest to Pratico. Analyzing § 2514(17), the trial court found that 100 shares of Olyphant Bank stock held by Philbin were exchanged for 68.9 shares of First Liberty Bank stock and that, through a stock split after Philbin's death, grew to 275.6 shares of common stock of First Liberty Bank. The court concluded that there is no basis to include the remaining common shares of stock of First Liberty Bank received from the original 3,900 shares of Olyphant Bank stock held by the testatrix by certificates 1058 and 1675.

■ ¶ 9 Upon our review, we find the record supports the trial court's findings and conclusions. At the time of the execution of the will, Philbin bequeathed to Pratico two certificates of Olyphant Bank stock. Her will specifies the certificates by number. Even though additional certificates of Olyphant Bank stock existed, she only bequeathed him certificates numbered 162 and 360. Pursuant to § 2514(17)(ii), if "the testator intended a specific bequest of securities owned by him at the time of the execution of the will," the legatee is entitled only to "any additional securities issued by the same entity thereon and owned by the testator by reason of a stock dividend, stock split or other action by the entity..." Philbin made a specific bequest of two certificates of stock and Pratico, as legatee, is only entitled to the additional securities that resulted from the split of those certificates of stock. We agree with the trial court that Pratico's 100 shares of Olyphant Bank stock eventually grew to 275.6 shares of common stock of First Liberty Bank and that is all he is entitled to under the will. Furthermore, there is no basis to include the remaining common shares of stock of First Liberty Bank received from the original 3,900 shares of Olyphant Bank stock held by the testatrix by certificates 1058 and 1675 because those two certificates were not within the specific bequest to Pratico. As such, he is not entitled to any additional securities by reason of a stock dividend or

stock split from certificates 1058 and 1675 pursuant to § 2514(17). Because we find that the trial court committed no error of law or an abuse of discretion, we affirm.

¶ 10 Decree affirmed.